UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| REBECCA LOU BRADSHER | * | CIVIL ACTION NO. 09-0628 |
| VERSUS | * | JUDGE S. MAURICE HICKS |
| WAL-MART LOUISIANA, L.L.C., ET AL. | * | MAG. JUDGE KAREN L. HAYES |

## MEMORANDUM RULING

Before the undersigned magistrate judge, on reference from the district court, is a motion to remand [doc. # 9] filed by plaintiff, Rebecca Lou Bradsher.[1]  Defendants oppose the motion. For reasons stated below, the motion is **GRANTED**.

### Background

On March 27, 2009, Rebecca Bradsher filed the instant suit in the 4th Judicial District Court, for the Parish of Ouachita, State of Louisiana, against defendants Wal-Mart Stores, Inc., Wal-Mart Louisiana, L.L.C., Sam's East, Inc., Sam's West, Inc., Sam's Club # 8237, and Ken Thompson.  Bradsher alleges that on March 29, 2008, she was speaking to a store employee near the front of the Monroe Sam's Club when she was struck in the back of the head by a flying basketball that had rebounded off a nearby basketball rim which store employees had placed there in connection with a store program to encourage customers to complete new credit card

---

[1] As this is not a motion excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court.  Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

applications. *See*, Petition, ¶¶ 5-7.[2] As a result of the impact, Bradsher sustained severe and disabling injuries which required extended medical care, pain management, and surgical intervention. *Id*., ¶¶ 11-12. Plaintiff contends that the accident was caused by defendants' negligence, and therefore seeks to hold them financially accountable for her resulting damages. *Id*., ¶ 8, Prayer.

On April 16, 2009, all properly named defendants[3] removed this matter to federal court on the sole basis of diversity jurisdiction, 28 U.S.C. § 1332. (Notice of Removal). Plaintiff is a Louisiana domiciliary. *Id*., ¶ 5. Although the various Wal-Mart and Sam's Club defendant entities (collectively referred to as "Sam's Club") are diverse from plaintiff,[4] the co-defendant, store manager, Ken Thompson, is a Louisiana domiciliary. *Id*., ¶ 10. However, defendants argue that plaintiff has not stated a cause of action against Thompson, and thus, he was improperly joined in an effort to defeat removal. *Id*., ¶¶ 10-11. Plaintiff disagrees with defendants' assessment of her claims against Thompson, and on May 15, 2009, filed the instant motion to remand due to incomplete diversity.[5]

On May 21, 2009, the undersigned issued a minute entry notifying the parties that if the court found that plaintiff had no reasonable possibility of recovery against the non-diverse

---

[2] Customers who completed applications were afforded the opportunity to shoot a basket. (*See*, Petition ¶ 6).

[3] Defendant, Sam's Club # 8237 did not join in the removal, presumably because it is not a viable legal entity. (Notice of Removal, ¶ 4).

[4] *See* Notice of Removal, ¶¶ 6-9.

[5] Plaintiff does not contest that the amount in controversy exceeds the requisite jurisdictional minimum. *See*, 28 U.S.C. § 1332. Indeed, plaintiff's petition alleges that her damages exceed $75,000. (Petition, ¶ 14).

defendant, then summary judgment would be recommended *sua sponte* in favor of said defendant. (May 21, 2009, Minute Entry [doc. # 12]). The parties were invited to file any additional briefs and/or competent summary judgment evidence addressing the relevant issue(s). *Id*. After extended delays for discovery and briefing, the matter is now before the court. *See* June 19, 2009, Order [doc. # 18].

## Law

### I.     Improper Joinder

The diversity jurisdiction statute presupposes a civil action between "citizens of different states," where all plaintiffs are diverse from all defendants. 28 U.S.C. § 1332; *Farrell Const. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 139-140 (5th Cir. 1990). To circumvent the patent lack of diversity between plaintiff and defendant, Ken Thompson, defendants invoke the improper joinder doctrine. The improper joinder doctrine affords a "'narrow exception' to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a 'heavy one.'" *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir.2007) (citing *McDonal v. Abbott Laboratories*, 408 F.3d 177, 183 (5th Cir. 2005)). To establish improper joinder, the removing party must demonstrate "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *McDonal, supra* (citing *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir.2003).

In the case *sub judice*, there are no allegations of actual fraud. Accordingly, the court must determine whether the removing defendant has demonstrated that plaintiff has "no possibility of recovery" against the non-diverse defendant, *i.e.* that there is "no reasonable basis" for the district court to predict that the plaintiff might recover against him. *Smallwood v. Illinois*

3

*Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004) (en banc). The court may resolve this issue in one of two ways: 1) the court can look at the allegations of the complaint to determine whether the complaint states a claim against the non-diverse defendant under state law (*i.e.* a Fed.R.Civ.P. 12(b)(6) analysis);[6] or 2) in the few cases where the plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *Smallwood*, *supra*. However, the "summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id*.[7] In the process, the court must consider "all unchallenged factual allegations" in the light most favorable to the plaintiff. *Travis*, *supra*. Any contested issues of fact and ambiguities of state law must be resolved in favor of remand. *Id.* If the removing defendant fails to establish improper joinder, then diversity is not complete and remand is required. *Id.*

**II.     Corporate Officer or Employee Liability**

Louisiana law provides that in limited circumstances a corporate officer or employee may be held individually liable for injuries to third persons. *Ford v. Elsbury*, 32 F.3d 931, 935 (5th Cir. 1994) (citing, *Canter v. Koehring Co.*, 283 So.2d 716 (La. 1973)). The liability may be imposed on such individuals even if the duty breached arises solely from the employment relationship. *Ford*, 32 F.2d at 936. Liability may be imposed on a manager under the following

---

[6] To survive a 12(b)(6) motion to dismiss, the "[f]actual allegations [in the plaintiff's petition] must be enough to raise a right to relief above the speculative level," which means that the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

[7] In other words, facts that can be easily disproved if not true. *Id.*

4

conditions:

> 1. The principal or employer owes a duty of care to the third person . . . breach of which has caused the damage for which recovery is sought.
>
> 2. The duty is delegated by the principal or employer to the defendant.
>
> 3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances-whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
>
> 4. With regard to the personal (as contrasted with the technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or malperformance and has nevertheless failed to cure the risk of harm.

*Ford v. Elsbury*, 32 F.3d 931, 936 (5th Cir. 1994) (citing, *Canter*, 283 So.2d at 721).

It is manifest that, "[a] merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage." La. R.S. 9:2800.6(A). Moreover, the owner or custodian of immovable property has a duty to keep such property in a reasonably safe condition. *Hutchison v. Knights of Columbus, Council No. 5747,* 847 So.2d 665 (La. App. 4th Cir. 5/7/2003), *affirmed*, 866 So.2d 228 (La. 2004). "The owner or custodian is required to discover any unreasonably dangerous conditions on the premises and correct the condition or warn

potential victims of its existence." *Id*. An employee can be held individually liable by a third person for breach of a duty that arises out of the employment or agency relationship between the employee and her employer. *Canter*, 283 So.2d at 722-723.

During the relevant period, the non-diverse defendant in this case, Ken Thompson, was the store manager at the Monroe Sam's Club where plaintiff was injured. Plaintiff alleges *inter alia* that Thompson (and Sam's Club) negligently: operated a promotion that involved shooting basketballs indoors without providing safeguards to customers; created a hazardous situation which foreseeably endangered customers; and failed to exercise reasonable care to protect customers of the store. *See* Petition, ¶¶ 8-9.

Under the *Canter* criteria, Thompson's liability turns on such factual issues as 1) whether he delegated with due care the responsibility for the credit card promotional activity, and 2) whether he was "aware or should have been aware of a risk of harm and nevertheless failed to respond to the risk in the manner in which a reasonably prudent [store manager] would respond in the same or similar circumstances." *Ford*, 32 F.3d at 936.

### Evidence & Analysis

In an affidavit attached to the notice of removal, Kenneth Thompson averred that he "did not determine the type of promotional activity which was ultimately utilized (i.e. the basketball promotional program), and [] did not determine either the location of the goal or where the shooters were to attempt to make baskets." (Thompson Affidavit, Notice of Removal). Thompson further stated that at the time of plaintiff's accident, he was not present at the store or on duty. *Id*. At his deposition, however, Thompson acknowledged that he had seen where his staff had located the basketball goal prior to the accident, but had not seen anyone take a shot.

(Thompson Depo., pgs. 6-12; Def. Suppl. Memo. [doc. # 21]).[8] He was also aware that Sam's Club employees had created a contest program to promote credit card applications. *Id*.[9] Thompson admitted that safety was a "shared responsibility between many." *Id*. Thompson had people under him who performed various tasks at the store, including Bonnie Kelly, "his" marketing "coach" who was primarily responsible for the safety aspects of the credit card promotional activity. (Thompson Depo., pg. 6; Def. Suppl. Memo. [doc. # 21]). Finally, according to Nicholas Jordan, the store/club manager was generally responsible for safety. (Jordan Depo., pgs. 3-4).[10]

    The foregoing evidence indicates that while Thompson did not personally initiate the allegedly hazardous conditions at the Monroe Sam's Club that led to plaintiff's accident (i.e. the placement of the basketball goal and the associated credit card promotional activity), Thompson

---

[8] The basketball goal came from Sam's Club stock. *Id*. Thompson did not know who made the decision to place the goal there. *Id*.

    In support of her motion to remand, plaintiff submitted two personal affidavits wherein she suggested that Thompson would have been aware of the basketball goal placement due to its proximity to the store's front doors. *See* Bradsher Affs. [doc. #s 14 & 22]. Defendants objected to the court's consideration of plaintiff's initial affidavit on the grounds that plaintiff lacked the requisite personal knowledge to support her affidavit. *See* Defs. Objection [doc. # 17]. Presumably, defendants' objection extends to the second affidavit. However, because Thompson admitted that he was aware of the goal's location in his deposition, the court need not rely upon plaintiff's affidavits.

[9] After a customer completed a credit card application, Sam's Club would permit the customer to shoot a basket. (Deposition of Nicholas Jordan, pgs. 8-9; Defs. Suppl. Memo.). If the customer made the basket, the cashier team who signed up the customer would receive a point. *Id*., pgs. 10-11. The customer herself did not receive anything for making a basket. *Id*. Thompson, however, was not aware that the cashier's team would earn a point for each basket made. (Thompson Depo., pg. 25).

[10] Jordan was the checkout supervisor for the Monroe Sam's Club during the relevant period.

nonetheless was aware of these conditions, yet took no action to prevent them.[11]  There is also evidence that many employees at the Monroe Sam's Club shared the store's overall duty to keep its premises free of any hazardous conditions which might injure its customers.  Under *Canter*, "[i]f the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility **unless he personally knows or personally should know of its non-performance or malperformance and has nevertheless failed to cure the risk of harm**."  *Canter, supra* (emphasis added).  That situation presents itself here.  Accordingly, removing defendants have not precluded the reasonable possibility that plaintiff may recover against the non-diverse defendant under state law.  *See*, *Ford, supra*.  As the Fifth Circuit observed, "[a] supervisor's knowledge of the dangers present 'could give rise to the personal duty contemplated in *Canter*.'" *Id.* (citing *Hayden v. Phillips Petroleum Co.*, 788 F. Supp. 285, 287 (E. D. La.1992); *compare Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 312 (5th Cir. 2005) (non-diverse defendants were not aware of the alleged unreasonably dangerous condition).

      The undersigned cautions that this is not a motion for summary judgment where after defendants make an initial showing, the burden of proof shifts to plaintiff to set forth competent summary judgment evidence in support of each element of her claim against the non-diverse defendant.  Rather, in the context of a motion to remand, removing defendants have the onerous burden of proving no reasonable possibility of recovery by plaintiff against the non-diverse defendant.

---

[11]  There is no suggestion or evidence that Thompson did not have authority to remedy a safety hazard.

The undersigned neither purports to express an opinion on the merits of the claims asserted against Kenneth Thompson, nor suggests that a Louisiana court will find that as a matter of law, and fact, that he is liable.  The undersigned only repeats the oft-cited principle that where the removing party grounds its allegations of improper joinder upon a theory that plaintiff cannot recover from a non-diverse defendant as a matter of law, this court is obliged to resolve all disputed questions of fact in favor of plaintiff; and then determine whether there could possibly be a valid cause of action set forth under state law. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir. 1981).  Doing so here, the court is compelled to find that removing defendants have failed to preclude the reasonable possibility that Thompson is subject to liability under state law.

In sum, Thompson's continued presence in this suit negates complete diversity between the parties as required to support subject matter jurisdiction.  28 U.S.C. § 1332.  Remand is required.  28 U.S.C. § 1447.

For the foregoing reasons,

The motion to remand [doc. # 9] filed by plaintiff Rebecca Lou Bradsher is hereby **GRANTED**; the case shall be **REMANDED** to the Fourth Judicial District Court for the Parish of Ouachita.[12]

THUS DONE AND SIGNED at Monroe, Louisiana, this 28th day of October, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

[12] Having found a reasonable possibility of recovery against the non-diverse defendant, the court does not (and cannot) reach the issue of summary judgment. *See* May 21, 2009, Minute Entry [doc. # 12].